IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

SYLVESTER BROWN,

                        Petitioner.

      v.                            Criminal Action Number 3:02CR292
                                              Civil Action Number 3:04CV200

UNITED STATES OF AMERICA

                        Respondent.

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on Petitioner Sylvester Brown's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct his Sentence. Petitioner claims that he pled guilty without understanding the nature of the charges or the consequences of the plea. Additionally, petitioner claims ineffective assistance of counsel for insisting that petitioner plead guilty and for failing to explain how the Court would determine his sentence. Petitioner asks the Court to hold an evidentiary hearing and re-sentence him as necessary. For the reasons stated herein, Petitioner's Motion shall be dismissed. The Court dispenses with an evidentiary hearing in this matter because the file and record conclusively shows that Petitioner is not entitled to relief. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

I. Background

The United States charged petitioner in a one-count Indictment for possession of a firearm by a convicted felon and by a person previously convicted of a misdemeanor crime of domestic

violence in violation of 18 U.S.C. §§ 922(g)(1) and (9).[1] On November 25, 2002, petitioner appeared with counsel and pled guilty to the one-count indictment before Magistrate Judge Lowe. On December 18, 2002, this Court, hearing no objection to the report and recommendation of the magistrate judge, satisfied itself that petitioner entered his guilty plea with full knowledge of the consequences of such a plea and found petitioner guilty of the charge.

In his Position with Respect to Sentencing Factors, petitioner submitted that he did not have any objections to the calculations in the Pre Sentence Report nor did he dispute any factors material to the calculations of the PSR figures.[2] On February 12, 2003, the Court sentenced petitioner to eighty (80) months in prison with two (2) months credit for time previously served.

On August 11, 2003, petitioner attempted to appeal his sentence. Petitioner filed a notice of appeal, claiming that defense counsel failed to take the necessary steps to correct factual inaccuracies in the PSR despite petitioner's attempts to call the apparent failings to his attorney's attention. Petitioner claimed that the inaccuracies led to a miscalculation of his criminal history category and caused the Court to impose a more severe sentence than he otherwise would have received.[3] The

---

[1] Section 922(g) provides, in pertinent part, that "[i]t shall be unlawful for any person (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; . . . or (9) who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." The maximum penalty for a violation under § 922(g) is no more than ten (10) years in prison.

[2] The Court found an Offense Level 21 and Criminal History Category VI, leading to a guideline range of 77 to 96 months.

[3] Petitioner's well-written notice of appeal belies the argument he presents in his habeas corpus petition that he did not enter into his guilty plea with knowledge or understanding of its consequences because of his lack of intelligence. As just one example, petitioner noted in his appeal brief that "counsel's failure to raise the Sentencing Guidelines issues, inter alia, may preclude their

United States moved to dismiss the appeal as untimely, asserting that petitioner failed to file his notice of appeal within 10 days of the judgment and that petitioner did not show excusable neglect or good cause so as to justify a thirty (30) day extension. See Fed. R. Appellate Pro. 4(b)(1)(A) and Fed. R. Appellate Pro. 4(b)(4). The Court of Appeals found that petitioner filed his notice of appeal well after both time periods expired and dismissed the appeal.

Finally, on March 25, 2004, this Court directed the Clerk to file petitioner's timely § 2255 application and directed the United States to respond.[4] Following an extension of time, the United States filed its responsive pleading. Petitioner did not file a reply brief; however, this matter is now ripe for consideration. Although petitioner requested an evidentiary hearing, if it appears that such a hearing is not required, "the judge shall make such disposition of the motion as justice dictates." Rule 11 of the Rules Governing Section 2255 Proceedings.

## II. Petitioner's 2255 Application

a. Ground One - Involuntary Guilty Plea based on Petitioner's Lack of Intelligence

The petitioner claims that he entered into the guilty plea without understanding the nature of the charge or the consequences of the plea. Petitioner asserts that his plea was both unlawfully induced and involuntary because he dropped out of school in the sixth grade and lacked the intelligence to comprehend his situation. As an example, petitioner insists that he could not read the form he signed waiving his right to a Rule 11 proceeding before the district court. Petitioner also

---

being raised in post-conviction 28 U.S.C. § 2255 proceedings." Petitioner made no mention of his intellectual limitations on direct appeal and his level of understanding with regard to his procedural position runs counter to such a claim.

[4]The Court's Order informed petitioner of his right under Local Rule 7(J) [now 7(K)] and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), to file a reply to any responsive pleading filed by the United States.

implies that the United States took advantage of his lack of intelligence by threatening or intimidating him into accepting the plea agreement

Petitioner does not provide the Court with anything more than conclusory allegations regarding his lack of intelligence and such claims appear contrived given the quality of petitioner's brief writing. As will be discussed below, petitioner received the benefit of a full Rule 11 plea colloquy before a magistrate judge with all the trappings and formalities that such a hearing entails. Petitioner does not state with any particularity the form or manner of the United States' alleged intimidation or any other conduct that placed him in fear of not accepting the agreement as offered.[5] The Fourth Circuit advises that "[i]t is within the discretion of the district judge to deny without a hearing Section 2255 motions which state only legal conclusions with no supporting factual allegations." Raines v. United States, 423 F.2d 529, 531 (4th Cir. 1970). Moreover, petitioner "bears the burden of proving his grounds for collateral attack by a preponderance of the evidence." Hall v. United States, 30 F. Supp. 2d 883, 889 (E.D. Va. 1998).

b. Ground One - Response by the United States

The United States claims that petitioner failed to assert the involuntariness of his plea on direct appeal and is therefore barred from raising the issue for the first time on collateral attack. See United States v. Frady, 456 U.S. 152, 164-165 (1982). However, a petitioner laboring under a procedural default may raise the claim for the first time in his habeas corpus application if he can demonstrate either cause and actual prejudice or that he is actually innocent. The United States

---

[5]It should be noted that there is no signed plea agreement in the Court's file on record even though Judge Lowe's Report and Recommendation references the written plea agreement and the statement of facts. Apparently, petitioner refused to sign the agreement believing that he would receive the same sentence regardless of whether or not he signed the agreement.

asserts that petitioner cannot establish good cause or actual prejudice. The United States cites the plea colloquy where Judge Lowe questioned the petitioner as to whether he reviewed the possible defenses, the charges themselves and the possible sentencing alternatives with his attorney. Petitioner confirmed that his attorney reviewed those issues and affirmed that his attorney did everything petitioner wanted him to do.

Furthermore, with regard to the allegation that he involuntarily waived his right to a Rule 11 hearing, petitioner acknowledged before Judge Lowe that he agreed to allow the magistrate to conduct the plea hearing and make a finding as to the voluntariness of his guilty plea. Lastly, petitioner cannot claim actual innocence where he admitted his guilt as part of the guilty plea. See United States v. Bowman, 348 F.3d 408, 417 (4th Cir. 2003) ("We repeat what we said before, that an appropriately conducted Rule 11 colloquy can only serve meaningfully if the court is entitled to rely on the defendant's statements made under oath to accept a guilty plea"); United States v. Lambey, 974 F.2d 1389, 1394 (4th Cir. 1992).

c. Discussion

Petitioner's briefs, both in support of his 2255 application and his notice of appeal, do not give any indication that his intelligence, or lack thereof, impacted on his ability to understand and voluntarily give his guilty plea. However, even if the Court assumes that petitioner could not read and that he lacked the intelligence to comprehend the judicial events unfolding around him, the Court is entitled to rely on representations made by petitioner during his plea hearing. During the plea colloquy, petitioner affirmed that he understood his right to plead not guilty and that he understood the charges against him and the maximum penalties for the offense. Furthermore, Judge Lowe specifically inquired into whether petitioner suffered from any mental disorder that would

affect his ability to understand the charges against him. Receiving a "no" answer, Judge Lowe proceeded with the remainder of the plea hearing.

Judge Lowe reviewed the rights petitioner agreed to give up by virtue of entering his plea and informed petitioner as to how his sentence would be calculated and ultimately imposed by the district court. Judge Lowe satisfied himself that petitioner understood the ramifications of his guilty plea and found that petitioner gave his plea voluntarily and will full knowledge of the consequences of such a plea. Hearing no objections to the Report and Recommendation of the magistrate judge, this Court accepted and adopted that Report. Petitioner's general claim that he lacked the intelligence to understand the consequences of his guilty plea, on its own, does not afford petitioner the relief he seeks where he received the benefits of a proper and thorough plea colloquy. All of the evidence before the Court points to petitioner's ability to understand at least the consequences of his guilty plea. Simply claiming lack of intelligence is not sufficient to overcome the strong presumption of verity created by a defendant's solemn declarations offered in open court. See Blackledge v. Allison, 431 U.S. 63, 74 (1977).

### d. Ground Two: Ineffective Assistance of Counsel

Petitioner contends that he pled guilty because defense counsel told him that "the Judge was bound by law to give him the time that he told him that he was going to get." In support of his claim, petitioner maintains that his attorney knew of his lack of intelligence yet insisted that he plead guilty. According to petitioner's motion, the guilty plea "did not actually benefit him at all." Petitioner claims that some unidentified person (presumable defense counsel) told him "that he would get a much more severe sentence if he went to trial." He insists that the "ramifications of that guilty plea were not explaiuned [sic] to someone with the mind of an adult, but rather to an individual who had

no clue as to what he was being told." Additionally, petitioner claims that defense counsel did not inform him that his past criminal history would increase his sentencing exposure.

Petitioner also claims that if not for counsel's ineffective assistance of counsel, he would not have pled guilty and, instead, would have insisted on proceeding to trial. According to petitioner, defense counsel informed him that he would receive a lesser sentence if he accepted the plea offer. He maintains that counsel's advice caused him to receive a more severe sentence than he otherwise would have received (presumable referring to a possible shorter sentence by going to trial). Finally, petitioner re-raises the issue he presented in his time-barred notice of appeal – that the Pre-Sentence Report incorrectly calculated his criminal history points which led to a longer period of imprisonment.

### e. Ground Two: The United State's Response

The United States argues that petitioner cannot meet either of the two primary means of showing that a plea was neither voluntary nor intelligently given. First, petitioner must either demonstrate that he did not understand the nature of the constitutional protections that he was giving up or that he had an incomplete understanding of the charge such that his plea cannot be viewed as an intelligent admission of guilt. Once again, the United States points to the completeness of the plea hearing and petitioner's affirmation that he understood the penalties for the charged offense and that he discussed with his attorney the effect of the sentencing guidelines in calculating and ultimately imposing a sentence.

With regard to defense counsel's alleged failure to object to errors in his criminal history calculation, the United States argues that petitioner bears the burden of proving what should have been done and how failure to take action impacted the outcome of his case. Merely asserting

ineffective assistance of counsel does not satisfy this burden. Accordingly, by failing to specify the act or omissions of counsel, the United States contends that petitioner failed to state a claim for ineffective assistance of counsel. Finally, the United States claims that petitioner cannot allege errors in the application of the Sentencing Guidelines in a 2255 proceeding absent extraordinary circumstances.[6]

### III. Analysis

A guilty plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." Hill v. Lockhart, 474 U.S. 52, 56 (1985). When challenging a guilty plea, the representations of defendant, his attorney and the prosecutor, as well as any findings made by the judge in accepting the guilty plea, stand as a "formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). However, the validity of the bargained guilty plea depends on the intelligent understanding of the defendant and not his defense counsel. See United States v. White, 366 F.3d 291, 298 (4th Cir. 2004). Indeed, "no procedural device for the taking of guilty pleas is so perfect in design and exercise as to warrant a per se rule rendering it uniformly invulnerable to subsequent challenge." Blackledge, 431 U.S. at 73 (internal quotations omitted).

---

[6]The United States cites United States v. Pregent, 190 F.3d 279, 283-84 (4th Cir. 1999), and other circuit court opinions, for this proposition. While technically correct, the United States fails to note that the defendant in Pregent did not raise his challenge in the context of an ineffective assistance of counsel claim. Although petitioner's 2255 memorandum itself does not state that counsel failed to take action with regard to errors in his criminal history calculation (which petitioner did assert in his time-barred direct appeal), petitioner does list this "plain error" under the ineffective assistance of counsel section of his argument. See e.g. United States v. Murray, 1999 U.S. App. LEXIS 6134 (4th Cir. 1999) (discussing the extraordinary circumstances bar to raising an error in the application of the sentencing guidelines but finding that Murray was "able to circumvent the general rule by styling his sentence claim as an ineffective assistance of counsel claim").

Generally, to establish a violation of the Sixth Amendment through ineffective assistance of counsel, a petitioner must show that "(i) his attorney's performance was, under all circumstances, unreasonable under prevailing professional norms, and (ii) [that] there is a reasonable possibility that, but for counsel's errors, a different result would have obtained." Smith v. United States, 871 F. Supp. 251, 255 (E.D. Va. 1994) (finding that petitioner was prejudiced by his counsel's failure to object to being assigned an improper criminal history point which raised his Criminal History Category from II to III); see also Strickland v. Washington, 466 U.S. 668, 687 (1984).

To succeed on an ineffective assistance of counsel claim as grounds for vacating a guilty plea, the analysis is slightly altered such that a petitioner must show deficient performance by counsel so that he or she "was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," Strickland, 466 U.S. at 687, and that "counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59. Under the prejudice prong, petitioner demonstrates an effect on the process by showing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. In sum, a petitioner claiming ineffective assistance of counsel following entry of a guilty plea must carry a greater burden in order to achieve success because, absent clear and convincing evidence to the contrary, a petitioner is bound by the representations he makes under oath during the plea colloquy. See Blackledge, 431 U.S. at 74-75.

Petitioner claims that he lacked the intelligence to understand the consequences of his guilty plea and that defense counsel provided ineffective assistance by misinforming him regarding the severity of the sentence the district court would impose and for inducing him to plead guilty with no actual benefit to the petitioner. Initially, the Court notes that petitioner failed to state for the Court

9

the alleged misrepresentations or promises made by defense counsel. Petitioner simply states that counsel did not adequately explain the ramifications of his guilty plea to someone of such limited intelligence. Additionally, petitioner asserts that defense counsel did not tell him that his criminal history would negatively impact his sentence.

Although the Rule 11 procedures do not entirely insulate a guilty plea from collateral attack, they may, and often do, serve the purpose of correcting any misinformation a defendant may have received from his defense counsel or the prosecution. In <u>United States v. Foster</u>, petitioner Foster attempted to establish prejudice by claiming that if he had been correctly told by his attorney that he could be sentenced as a career offender, he would have pled "not guilty" and proceeded to trial. 68 F.3d 86, 88 (4th Cir. 1995). The Fourth Circuit rejected Foster's argument and found that "any misinformation foster may have received from his attorney was corrected by the trial court at the Rule 11 hearing, and thus Foster was not prejudiced." <u>Id.</u> The Court of Appeals, quoting its previous decision in <u>United States v. Lambey</u>, 974 F.2d 1389, 1395 (4th Cir. 1992) (en banc), stated that

> if the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and defendant.

<u>Foster</u>, 68 F.3d at 88. The Fourth Circuit then proceeded to examine Foster's Rule 11 hearing in which the district court informed Foster of the penalties he would face and explained the process of imposing a sentence under the Guidelines. The Court concluded by observing that even if trial counsel provided false information, Foster "was in no way prejudiced by such information given the trial court's careful explanation of the potential severity of the sentence." <u>Id.</u>

10

Based on a review of the record, including the proceedings held pursuant to Rule 11, see Crawford v. United States, 519 F.2d 347, 350 (4th Cir. 1975), the magistrate judge informed petitioner of the charges pending against him, the consequences of his guilty plea and the manner in which the district court would impose his ultimate sentence. District courts within the Fourth Circuit operate under the rule that "the accuracy and truth of an accused's statements at a Rule 11 proceeding in which [petitioner's] guilty plea is accepted are 'conclusively' established by that proceeding unless and until he makes some reasonable allegation why this should not be so." Id. Stated differently, "a defendant should not be heard to controvert his Rule 11 statements in a subsequent § 2255 motion unless he offers a valid reason why he should be permitted to depart from the apparent truth of his earlier statement." Id. More specifically, an attorney's bad estimate of a sentence cannot be used to invalidate a guilty plea when the court informs the defendant that his sentence cannot be specifically predicted and defendant acknowledges that to be the case. See Lambey, 974 F.2d at 1394.

Petitioner asserts that his low level of intelligence prevented him from understanding the consequences of his guilty plea. However, petitioner acknowledged before the magistrate judge that he understood the charge leveled against him as well as the maximum possible penalties. Furthermore, Judge Lowe explained the manner in which the district court would calculate petitioner's sentence and petitioner again acknowledged his understanding. As in Crawford, petitioner was represented by counsel and "his allegations do not extend beyond the matters about which he was interrogated" at his plea hearing. Crawford, 519 F.2d at 350. Nothing in the record before the Court supports petitioner's argument that but for counsel's deficient performance or his

lack of intelligence, he would have rejected the offered plea agreement and proceeded to trial. Therefore, petitioner cannot show prejudice based on any purported ineffective assistance.

Although the Court chose to address the merits of petitioner's argument regarding defense counsel's estimate of the length of a possible sentence, the United States correctly noted that petitioner cannot show cause or prejudice that would excuse his procedural default in failing to raise the involuntariness of his plea based on lack of intelligence before the district court originally or on direct appeal. The Supreme Court makes it clear that "a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982). Moreover, "[o]ur trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless postconviction collateral attacks." Id. at 164-65; see also Bousley v. United States, 523 U.S. 614, 621 (1998) ("Even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review. Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'"). Petitioner's alleged lack of intelligence simply does not show the requisite cause required to excuse his default and, as demonstrated above, petitioner did not demonstrate actual prejudice. Petitioner never proclaimed his inability to understand the proceedings against him at his plea hearing, during sentencing or in his time-barred notice of appeal.

Nor can petitioner prove that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack due to his actual innocence." King v. United States, 214 F. Supp. 2d 669, 673 (E.D. Va. 2002). Petitioner cannot demonstrate actual innocence by clear and convincing evidence. Indeed, petitioner admitted that he possessed the firearm.

With regard to his criminal history, petitioner represents that "plain error occurred due to the incorrect calculation of his criminal offenses [sic] history points causing the petitioner to be sentenced at a higher sentencing scale than he would have been absent the plain error." Although petitioner's time-barred notice of appeal alleged that defense counsel failed to make objections to errors in his criminal history, petitioner has not raised a similar argument in his 2255 application. Rather, petitioner offers conclusory allegations of error without explaining to the Court where the errors occurred.

Certainly defense counsel's failure to object to errors in the pre-sentence report qualifies as grounds for filing a 2255 petition. See United States v. McPherson, 2000 U.S. App. LEXIS 3633 (4th Cir. 2000) ("To the extent that McPherson frames the issue in his informal brief as an ineffective assistance of counsel claim for his trial counsel's failure to object to the pre-sentence report, such claims are better pursued in a motion filed pursuant to 28 U.S.C.A. § 2255." ). However, petitioner presents this issue as though he is on direct appeal, citing the plain error rule, rather than highlighting his counsel's deficient performance and informing the Court as to the prejudice he suffered. See United States v. Ford, 88 F.3d 1350, 1355-56 (4th Cir. 1996) ("A defendant's failure to object to a sentencing issue amounts to a waiver of his right to raise that issue on appeal, absent plain error.").

A petitioner collaterally attacking his sentence pursuant to § 2255 must prove by a preponderance of the evidence that the Court imposed his sentence in violation of the United States Constitution. See 28 U.S.C. § 2255; Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam). While petitioner may have a credible claim, he has not provided the Court with any substance to support his conclusory allegation. See e.g. United States v. Terry, 366 F.3d 312, 316

13

(4th Cir. 2004) (finding Terry's ineffective assistance claim conclusory and insufficient to establish the requisite prejudice under Strickland where Terry failed to provide concrete evidence of what he would have testified to in exculpation; Terry omitted any details that would explain why the district court would have given his claims weight).  Petitioner must do more that allege that his Pre-Sentence Report contains errors to which his defense counsel failed to object.  Indeed, it is the petitioner who carries the burden of proof at this stage of review and petitioner failed to highlight the alleged errors for the Court.

## IV. Conclusion

Petitioner's Motion to Vacate, Set aside or Correct his sentence is hereby DENIED. Petitioner has not carried his burden of proof needed to overcome the representations he made during his Rule 11 hearing.  Additionally, the record does not demonstrate that petitioner was prejudiced either by his counsel's misinformation and petitioner failed to come forward with any evidence of errors in his Pre-Sentence Report to which defense counsel failed to object.  Therefore, petitioner did not prove by a preponderance of the evidence that the Court imposed his sentence in violation of the United States Constitution.

An appropriate Order shall issue.

   /s/ James R. Spencer
JAMES R. SPENCER
UNITED STATES DISTRICT JUDGE

 APR 18, 2005
DATE